An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored but may be permitted in accordance with the provisions of Rule 30(e)(3) of the *North Carolina Rules of Appellate Procedure*.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-638

Filed 5 August 2026

Alamance County, No. 24CVD000913-000

DEVONDA SNIPES, Plaintiff,

v.

ALONZA CRISP, Defendant.

Appeal by Plaintiff from order entered 6 February 2025 by Judge Meredith T. Edwards in Alamance County District Court. Heard in the Court of Appeals 14 January 2026.

> *Garrett, Walker, Aycoth & Olson, Attorneys at Law, by Kelly Fairman, for plaintiff-appellant.*
>
> *Walker & Bullard, P.A., by Daniel S. Bullard, for defendant-appellee.*

STADING, Judge.

Devonda Snipes ("Plaintiff") appeals the trial court's child support order. Plaintiff contends the trial court erred by applying a presumption of reasonableness to the parties' unincorporated separation agreement. Additionally, Plaintiff argues the trial court failed to make the required findings that were supported by the evidence. For the reasons below, we vacate the trial court's order and remand so it

may make the required findings.

## I.   Background

Plaintiff and Alonza Crisp ("Defendant") were married in 2021 and divorced in 2022.  The parties have one minor child, Emily.[1]  On 7 June 2022, the parties signed a marital separation agreement (the "Agreement").  "Attachment A" of the Agreement provides that Plaintiff and Defendant have joint custody of Emily without specifying a placement schedule.  As to child support, Attachment A provides: "[n]either Spouse is obligated to pay child support. Each Spouse shall provide direct support for the Minor Children for those periods when the Minor Children are in their physical custody."

Under Attachment A's "Health and Dental Insurance" provision, Defendant:

> [S]hall maintain coverage for each minor child under the medical and dental insurance provided through his/her employment. To facilitate the use of such coverage for the child(ren), the Couple shall cooperate fully and in a timely manner, including, but not limited to, obtaining and providing all necessary insurance cards and claim forms, completing and submitting all necessary documents, and delivering all insurance payments. For purposes of duration and modification, this provision shall be deemed part of the child support orders made by the local court in the Couples' dissolution action.

Under the "Uncovered Health Care Expenses" provision, Defendant:

> [S]hall be responsible for medical, dental, orthodontic, optical, psychiatric, psychological, and other health care

---

[1] A pseudonym is used to protect the minor child's identity.  *See* N.C. R. App. P. 42(b).

expenses of the Minor Children, to the extent not covered by insurance. The Spouse incurring the expense shall present to the other Spouse an itemized statement of costs accrued or paid, proof of payment of any costs paid by the Spouse, and any necessary information about how to make payment to the provider within a reasonable time, but not more than ___ days after accruing the costs. The reimbursing Spouse shall make the required payment or reimbursement within a reasonable time, but not more than ___ days after notification of the amount due. For purposes of duration and modification, this provision shall be deemed part of the Child Support orders made by the court in the Couples' dissolution action.

On 22 June 2022, the parties obtained their divorce judgment. However, the Agreement was not incorporated into their divorce judgment. Post separation, the parties nevertheless acted in accordance with the Agreement. Although the Agreement did not specify a placement schedule, the parties mutually agreed that Plaintiff would have primary custody of Emily.

Moreover, even though the Agreement failed to provide child support payments to either party, Plaintiff eventually reached out to Alamance County Child Support Enforcement to collect child support from Defendant. On 28 November 2023, Alamance County Child Support Enforcement, on behalf of Plaintiff, served Defendant a complaint for child support. In his answer, Defendant referenced the Agreement, which resulted in Alamance County dismissing the complaint.

On 24 April 2024, Plaintiff filed a complaint seeking retroactive and prospective child support from Defendant. In her verified pleading, Plaintiff alleged

that, contrary to his statutory duty to support his minor child, "Defendant does not pay child support or contribute to the child's expenses."

On 21 January 2025, the trial court held a hearing on the matter. At this hearing, Plaintiff testified that she suffered from multiple sclerosis, which caused her to experience symptoms such as muscle spasms and migraines. Due to her condition, Plaintiff received disability since 2015, and the only income available to her was Social Security benefits, which totaled $1,800.00 per month. However, Plaintiff testified to occasionally working at her mother's hair salon.

Plaintiff also testified that she could not afford to buy clothes for Emily. Consequently, the paternal grandmother, Patricia Jones, purchases Emily's clothing. During her testimony, Plaintiff confirmed that Defendant received custody of Emily every other weekend. Regarding Emily's daily schedule, Plaintiff testified that she or Ms. Jones takes Emily to school in the morning. After school, Ms. Jones picks Emily up and takes her to a daycare facility, which happens to be owned by Ms. Jones.

Ms. Jones testified that, during the school year, she would pick Emily up from Plaintiff and take her to school. Ms. Jones would "usually take breakfast in the car" for the child. After school, Ms. Jones testified that she would pick Emily up and take her to the daycare until Defendant can pick her up. Ms. Jones recounted that Defendant normally spends time with Emily and provides food for her until he drops her off at Plaintiff's around 7:30 p.m. During the school week, Ms. Jones testified that she, along with Defendant, generally provides for all of Emily's clothing needs,

breakfasts, lunches, and dinners. During the summer, the parties keep the same routine, except that Plaintiff drops the child off at the daycare facility. Ms. Jones also testified that Plaintiff mentions working for her mother's hair salon "maybe twice a month" but does not inform her every time she works.

Defendant testified that he works for the Town of Chapel Hill and plays piano for his church. An affidavit from Defendant's employer reflected that he pays for the child's health insurance. Defendant also testified that he "provide[s] dental, health, and vision insurance." During the time of Defendant's testimony, he made approximately $70,000.00 per year.

Additionally, Defendant testified that he, not Plaintiff, paid childcare expenses even when the parties were married, and during this time, Plaintiff received income from disability payments and from work. In response to providing clothing and supplies after the separation, Defendant testified: "[y]es, sir, clothing, the body wash, everything. Anything the mom has text me and asked for I make sure that I purchase it." Defendant confirmed he had custody of Emily every other weekend.

Evidence from the hearing also tended to show that Emily is enrolled in Burlington Christian Academy. Tuition costs $8,418.00 each year, and Emily receives an annual scholarship of $6,722.00. Ms. Jones pays the remainder of Emily's tuition, while Defendant provides funds to assist her in paying the tuition. Defendant also covers the full cost for Emily to attend daycare, which amounts to $90.00 each

week during the school year and $180.00 each week during the summer. In 2024,

Defendant paid Ms. Jones a total of $5,130.00 for childcare services.

On 6 February 2025, the trial court entered its order on Plaintiff's complaint

for child support. The trial court found:

> 6. As a result of the separation of marriage and pending divorce, the parties executed a Marital Separation Agreement, entered and admitted into evidence without objection as Defendant's exhibit 3.
>
> 7. Both parties signed this agreement on June 7, 2022[,] and their signatures were notarized.
>
> 8. This separation agreement was not incorporated into their divorce judgment on June 22, 2022. Provision XXXII of the agreement provides that "the effective date of this Agreement shall be the date of its execution by the second of the Couple to do so."
>
> . . . .
>
> 10. As a result of the visitation agreement in Attachment A, the parties have consented that on school days, Defendant (Dad or Dad's family) will provide care for [Emily] from before school until 7:30pm-8pm and every other Friday evening through Sunday evening.
>
> 11. As a result of the visitation agreement in Attachment A, the parties have consented that on school days, Plaintiff (Mom) will provide care for [Emily] from 7:30-8pm until roughly 7am the following morning when she meets the maternal grandmother who drives [Emily] to school.
>
> 12. Defendant provided proof that he is paying work-related childcare expenses as evidenced by Defendant's exhibits 1 and 2. Defendant's mother is picking [Emily] up from school, taking her to daycare and [Emily] remains at daycare for 15 minutes to 1 hour while Defendant drives from Chapel Hill to Alamance County to pick her up.

13. There was no evidence that Plaintiff picks [Emily] up from school or that Plaintiff retrieves her from childcare either during the school year or during the summer when she is at childcare all day.

14. Defendant provided proof that he is paying [Emily's] health insurance expenses as required by Attachment A, section viii and as evidenced by Plaintiff's exhibit 3, the employment affidavit from Defendant's employer, the Town of Chapel Hill.

15. During the times [Emily] is with Defendant, Defendant or Defendant's family meets all of [Emily's] needs, provides for all of her meals, and provides all necessary care and support for her in compliance with the terms and conditions of the separation agreement.

16. During the times that [Emily] is with Plaintiff, Plaintiff or Plaintiff's family meets all of [Emily's] needs, provides for all of her meals, and provides all necessary care and support for her in compliance with the terms and conditions of the separation agreement.

17. Defendant supplies all of [Emily's] clothing and toiletries and other necessary items. He does so even at the request of the Plaintiff for him to purchase items for use at her home.

18. At the time of the hearing, there is no evidence by either Plaintiff or Defendant that [Emily] has any reasonable need that is unmet.

19. Defendant has shown a willingness to meet every reasonable need of [Emily], even needs that do not occur during the time when she is in his custody.

20. The Court finds that the application of the guidelines would be inappropriate and unjust under these facts.

In its order, the trial court noted that it considered "the factors set out in N.C.G.S. 50-13.4(c) to determine the reasonableness of the provisions in the

separation agreement[,]" and concluded "that the presumption of reasonableness in *Pataky* has not been rebutted as there are currently no needs of the minor child that are not being met by the arrangement of the parties . . . ." From here, the trial court denied Plaintiff's request for retroactive child support and denied Plaintiff's initial claim to establish child support. The trial court ordered that the Agreement remain in effect. On 24 February 2025, Plaintiff entered notice of appeal.

## II.  Analysis

Plaintiff argues that the trial court's order impermissibly incorporated the settlement agreement's provision for child support without making the required findings under N.C. Gen. Stat. § 50-13.4(c) (2025) and *Pataky v. Pataky*, 160 N.C. App. 289, 585 S.E.2d 404 (2003). Specifically, Plaintiff maintains the incorporated agreement failed to create a presumption of reasonableness under *Pataky*, and the trial court failed to enter an order "in the amount provided in the separation agreement or reference the presumptive guidelines in setting an amount for child support."

"Child support orders entered by a trial court are accorded substantial deference by appellate courts and our review is limited to a determination of whether there was a clear abuse of discretion." *Leary v. Leary*, 152 N.C. App. 438, 441, 567 S.E.2d 834, 837 (2002). "Under this standard of review, the trial court's ruling will be overturned only upon a showing that it was so arbitrary that it could not have been the result of a reasoned decision." *Roberts v. McAllister*, 174 N.C. App. 369, 374,

621 S.E.2d 191, 195 (2005). "The trial court must, however, make sufficient findings of fact and conclusions of law to allow the reviewing court to determine whether a judgment, and the legal conclusions that underlie it, represent a correct application of the law." *Id.*

"A separation agreement is a contract between the parties and the court is without power to modify it except (1) to provide for adequate support for minor children, and (2) with the mutual consent of the parties thereto where rights of third parties have not intervened." *McKaughn v. McKaughn*, 29 N.C. App. 702, 705, 225 S.E.2d 616, 618 (1976). "It is settled that any separation agreement dealing with the custody and the support of the children of the parties cannot deprive the court of its inherent as well as statutory authority to protect the interests of and provide for the welfare of minors." *Id.* at 704, 225 S.E.2d at 618.

"Where parties to a separation agreement agree upon the amount for the support and maintenance of their minor children, there is a presumption in the absence of evidence to the contrary, that the amount mutually agreed upon is just and reasonable." *Fuchs v. Fuchs*, 260 N.C. 635, 639, 133 S.E.2d 487, 491 (1963) (citation modified). "A party seeking an initial judicial determination of child support, where the parties have previously executed an unincorporated separation agreement, must 'show the amount of support necessary to meet the reasonable needs of the children at the time of the hearing.'" *Jackson v. Jackson*, 280 N.C. App. 325, 329, 868 S.E.2d 104, 108 (2021) (citation omitted). "The trial court will not alter the

amount of child support contractually agreed upon by the parties, unless the amount necessary to meet the reasonable needs of the child substantially differs from the agreed upon amount." *Id.* Examining a child's reasonable needs requires the trial court to consider the "health, education, and maintenance, having due regard to the estates, earnings, conditions, accustomed standard of living of the child and the parties, the child care and homemaker contributions of each party, and other facts of the particular case." N.C. Gen. Stat. § 50-13.4(c) (2025); *see also Atwell v. Atwell*, 74 N.C. App. 231, 234, 328 S.E.2d 47, 49 (1985).

In *Pataky v. Pataky*, this Court held:

> In an initial determination of child support where the parties have executed an unincorporated separation agreement that includes provision for child support, the court should first apply a rebuttable presumption that the amount in the agreement is reasonable and, therefore, that application of the guidelines would be "inappropriate." The court should determine the actual needs of the child at the time of the hearing, as compared to the provisions of the separation agreement. If the presumption of reasonableness is not rebutted, the court should enter an order in the separation agreement amount and make a finding that application of the guidelines would be inappropriate. If, however, the court determines by the greater weight of the evidence, that the presumption of reasonableness afforded the separation agreement allowance has been rebutted, taking into account the needs of the children existing at the time of the hearing and considering the factors enumerated in the first sentence of G.S. § 50-13.4(c), the court then looks to the presumptive guidelines established through operation of G.S. § 50-13.4(c1) and the court may nonetheless deviate if, upon motion of either party or by the court *sua sponte,* it determines application of the guidelines would not meet or

would exceed the needs of the child . . . or would be otherwise unjust or inappropriate.

160 N.C. App. 289, 305, 585 S.E.2d 404, 414–15 (2003) (citation modified).

### 1.  *Applicability of the Pataky Presumption*

Plaintiff first argues the terms of the agreement do not qualify to be reviewed under a presumption of reasonableness.  Specifically, Plaintiff contends since "the Agreement in this matter did not provide for expense payments in lieu of cash child support, had no interdependent clauses and no custody terms, it was not an Agreement that could or should enjoy a presumption of reasonableness."  We disagree as to this point.

In *Pataky*, a couple with two minor children separated after twelve years of marriage.  *Id.* at 290, 585 S.E.2d at 406.  Upon separation, the couple entered into a separation agreement, which provided for

> joint legal and physical custody of the minor children, [and] also stated that [husband-father]: will pay for the children's health insurance, after-school care, extra-curricular expenses, school supplies and clothing. In addition, Husband will maintain college savings funds for the children. Since both parties will be providing support for the children equally, no child support payments shall be paid by either party.

*Id.* at 290–91, 585 S.E.2d at 406.

- 11 -

In the present case, the Agreement provides that the parties share joint custody of Emily, with no child support payments to either party since each spouse "shall provide direct support for the Minor Children for those periods when the Minor Children are in their physical custody." Additionally, Defendant agreed to maintain Emily's health and dental coverage, and to be responsible for other health care expenses to the extent not covered by insurance.

Unlike *Pataky*, the parties chose not to explicitly determine the placement schedule. Further, the trial court in its order acknowledged that as a "result of the visitation agreement in Attachment A, the parties have consented" to many aspects of Emily's placement schedule. Plaintiff's "interdependent terms" argument, without deciding whether such terms are required, fails to consider that the Agreement clearly provides that each party "shall provide direct support for the Minor Children for those periods when the Minor Children are in their physical custody" in lieu of child support payments. For these reasons, the trial court did not err by applying a presumption of reasonableness to the Agreement. *See id.* at 301–02, 585 S.E.2d at 412–13.

### 2.  *Required Findings*

Plaintiff next argues that even if the *Pataky* presumption applies, the trial court erred by: failing to make the required findings, making findings that were unsupported by the evidence, and entering the incorrect disposition.

"Where, as here, the trial court sits without a jury, the judge is required to 'find the facts specially and state separately its conclusions of law thereon and direct the entry of the appropriate judgment.' " *Coble*, 300 N.C. at 712, 268 S.E.2d at 188–89 (citation omitted). The purpose of this requirement "is to allow a reviewing court to determine from the record whether the judgment and the legal conclusions which underlie it represent a correct application of the law." *Id.* at 712, 268 S.E.2d at 189.

In cases like ours, "the court should determine the actual needs of the child at the time of the hearing, as compared to the provisions of the separation agreement." *Pataky*, 160 N.C. App. at 305, 585 S.E.2d at 414 (citation modified). "If the amount necessary to meet the needs of the child, at the time of the hearing, 'substantially exceeds' the amount of child support provided for in the separation agreement, then the presumption that the amount provided in the separation agreement is reasonable is rebutted." *Jackson*, 280 N.C. App. at 331, 868 S.E.2d at 109 (citation omitted). "In order to determine the reasonable needs of the child, the trial court must hear evidence and make findings of *specific* fact on the child's actual past expenditures and present reasonable expenses." *Id.* at 331, 868 S.E.2d at 109 (quoting *Atwell*, 74 N.C. App. at 236, 328 S.E.2d at 50). "The trial court must consider competent evidence of the minor child's yearly expenses incurred by both parents, even if the child lived with each parent at different times throughout the year, to determine the minor child's reasonable needs fully and accurately." *Jackson*, 280 N.C. App. at 331, 868 S.E.2d at 110. "Factual findings must be supported by evidence, and not based on

speculation." *Id.* (citation modified) (quoting *Atwell*, 74 N.C. App. at 236–37, 328 S.E.2d at 51).

Here, the trial court's order suggests that its findings of fact, specifically, numbers 10–20, relate to Emily's actual needs. Additionally, the trial court ultimately concluded: "that the current situation and agreement between the parties meets the reasonable needs of [Emily] for health, education, and maintenance, having due regard to the estates, earnings, conditions, accustomed standard of living of the child and the parties and all other circumstantial facts of this case." Importantly, Plaintiff does not argue there was sufficient evidence to rebut the *Pataky* presumption; rather, Plaintiff merely argues the trial court did not make the required findings of Emily's needs so it could properly compare the support needed for Emily at the time of the hearing to what was provided under the Agreement. As to this particular argument, we agree.

In this case, the trial court did not "make findings of *specific* fact on the child's actual past expenditures and present reasonable expenses." *Jackson*, 280 N.C. App. at 331, 868 S.E.2d at 109 (citation omitted); *see also Brind'Amour v. Brind'Amour*, 196 N.C. App. 322, 327, 674 S.E.2d 448, 451 (2009); *see also Boyd v. Boyd*, 81 N.C. App. 71, 76, 343 S.E.2d 581, 585 (1986) ("We hold, under the authority of *Williams*, that the moving party's only burden is to show the amount of support necessary to meet the reasonable needs of the child at the time of the hearing."); *see also Pataky*, 160 N.C. App. at 302, 585 S.E.2d at 413 ("We conclude that the guideline amount is

not competent evidence of the *actual* amount required to meet the needs of the children at the time of the hearing. Doing so would strip *Fuchs-Williams* of all but illusory meaning, and diminish to little or no consequence the quantitative and qualitative factors enumerated in the first sentence of G.S. § 50-13.4(c).").

Plaintiff presented exhibits including her Social Security benefits, a subpoenaed affidavit from Defendant's employer showing his income, and Emily's current financial standing regarding tuition. Plaintiff testified to her struggles with multiple sclerosis, to receiving disability benefits, to having trouble purchasing clothing for her child, and to the cost of the child's tuition. Plaintiff's evidence of the parties' relative incomes does not show the child's specific needs at the time of the hearing. Plaintiff raised issues concerning the child's clothes and tuition expense, however, Plaintiff herself testified to those expenses being covered by Ms. Jones. Plaintiff asserts in her brief that the "evidence as to the specific costs to meet the child's needs was incomplete, but to a large extent, was simply not available to Plaintiff."

Competent evidence provided by Defendant showed that he, in compliance with the Agreement, provides Emily with medical and dental coverage. The evidence also shows either Defendant or Ms. Jones provides for most of the childcare expenses and duties, including meals, transportation, tuition payments, and clothing. Defendant also purchases additional supplies to be used at Plaintiff's home. As to any extra expenses not specified by the Agreement, Defendant has assumed the

responsibility for payment, which the parties have consented to for over two and a half years.

Although the trial court found there is "no evidence by either Plaintiff or Defendant that [Emily] has any reasonable need that is unmet," Emily's reasonable needs were not established by "findings of *specific* fact on the child's actual past expenditures and present reasonable expenses." *Jackson*, 280 N.C. App. at 331, 868 S.E.2d at 109 (citation omitted); *see also Pataky*, 160 N.C. App. at 306, 585 S.E.2d at 415 ("Here, the trial court neither made findings related to the needs of the children at the time of the hearing nor concluded whether the presumption of reasonableness had been rebutted. Despite . . . arguments to the contrary that a whole-record review by this Court would support these essential findings, this cannot substitute for such findings by the trial court."). Therefore, we vacate the order and direct the trial court, on remand, to "hear evidence and make findings of specific fact on the child's actual past expenditures and present reasonable expenses." *Atwell*, 74 N.C. App. at 236, 328 S.E.2d at 50; *see also Pataky*, 160 N.C. App. at 305–06, 585 S.E.2d at 415 ("Even in the context of these facts, where there is no allowance for cash but, *inter alia,* medical insurance coverage and after-school care costs instead, the trial court must conduct a hearing and make findings and conclusions consistent with this opinion."). After Emily's reasonable needs are determined, if "the presumption of reasonableness is not rebutted, the court should enter an order in the separation agreement amount

and make a finding that application of the guidelines would be inappropriate." *Pataky*, 160 N.C. App. at 305, 585 S.E.2d at 414.

### III.  Conclusion

Since there are insufficient findings to support and accurately depict the child's reasonable needs, we vacate the trial court's order.  On remand, the trial court may conduct a new evidentiary hearing if necessary.  *See Kaiser v. Kaiser*, 259 N.C. App. 499, 511, 816 S.E.2d 223, 232 (2018).

VACATED AND REMANDED.

Judges ARROWOOD and GRIFFIN concur.

Report per Rule 30(e).